IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **TERESA DEANN SMOAK** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:13-CV-059-O-BL |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| Defendant | § | Assigned to U.S. Magistrate Judge |

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

Pursuant to 42 U.S.C. § 405(g), Plaintiff Teresa Deann Smoak seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for supplemental security income under Title XVI of the Social Security Act. All parties consented to the jurisdiction of the magistrate judge, and the case was reassigned to this Court in accordance with 28 U.S.C. § 636(c).

After considering the pleadings, the briefs, and the administrative record, this Court affirms the Commissioner's decision and dismisses, with prejudice, Smoak's complaint.

### Statement of the Case

Following a hearing on February 21, 2012, an Administrative Law Judge (ALJ) determined on March 23, 2012, that Smoak was not disabled. Specifically, the ALJ held that Smoak's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she had the residual functional capacity (RFC) to perform less than a full range of light work, and that although she was not capable of performing her past relevant

work, she was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on March 8, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Smoak filed an application for supplemental security income on April 13, 2010. (Tr. 12). Smoak claims she became disabled on February 27, 2004, due to epilepsy, affective/mood disorders, back injury, neck injury, heart problems, blackouts, and anxiety. (Tr. 12, 55, 56, 57, 131, 136). Previously, Smoak worked as store manager, photographer, office manager, stylist, and cutter. (Tr. 32-33, 138, 159). Smoak completed high school in 1986 and graduated from Aladin Beauty College in 1993. (Tr. 137).

In 2004, Smoak was involved in a car accident, which triggered many of the symptoms that caused her to eventually stop working. (Tr. 33-34, 137, 148, 149, 151, 540, 583, 585). Medical records show that between 2004 and 2011, Smoak was treated for syncope, sleep disorders, sinus issues, mental health issues, obesity, and gastrointestinal issues. (Tr. 186-227, 236-88, 303-07, 332-592). After the car accident, Smoak underwent surgeries to treat her neck and back pain.[1] (Tr. 309, 574). She claims these impairments affect her ability to lift, squat, bend, stand, walk, sit, and kneel. (Tr. 156).

Smoak was ordered to undergo psychiatric reviews in July and October of 2010. (Tr. 289-302, 318-331). In July, Dr. Gilland, M.D., concluded that Smoak suffered from depression. (Tr. 289, 292). Dr. Gilland did not have sufficient evidence to make any other findings. (Tr. 289-

---

[1] While reference to these procedures is made in the administrative record, medical records detailing the procedures are not available for review.

302). After a consultative exam, Smoak attended another psychiatric review in October 2010. (Tr. 318-331). Here, Dr. J. Cox, Ph.D., found that Smoak suffered from bipolar disorder with both manic and depressive symptoms, and panic disorder with agoraphobia. (Tr. 321, 323). Dr. Cox reported that Smoak only had mild limitations in activities of daily living, and moderate limitations in maintaining social functioning, concentration, persistence, and pace. (Tr. 328).

In December 2010, Smoak visited Dr. Richard Kownacki, Ph.D., for a consultative exam. (Tr. 308-311). Based on her complaints, psychiatric tests, and his own observations, Dr. Kownacki diagnosed Smoak with the following ailments: bipolar II disorder, panic disorder with agoraphobia, and chronic back problems from the motor vehicle accident. (Tr. 311). Dr. Kownacki also opined that Smoak's prognosis was poor. (Tr. 311).

Physical and mental RFC evaluations were also performed. (Tr. 228-35, 314-17). Dr. Frederick Cremona, M.D., evaluated Smoak's physical RFC. In his evaluation, Dr. Cremona opined that Smoak could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk with normal breaks for a total of 6 hours in an 8-hour workday, sit, with normal breaks, for a total of about 6 hours in an 8-hour workday, and push/pull an unlimited amount other than as shown for lift/carry. (Tr. 229). Smoak could frequently climb ramps or stairs, stoop, balance, kneel, crouch, and crawl, but she was never to climb ladders, ropes, or scaffolds. (Tr. 230). Dr. Cremona suggested that Smoak avoid even moderate exposure to hazards because of her history of syncope and seizure. (Tr. 232). In the mental RFC assessment, Dr. Cox determined that Smoak "retains the capacity to understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings." (Tr. 316). Notably, Dr. Cox opined that Smoak's alleged limitations were not

fully supported by the record. (Tr. 316).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*,

415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452).

**Discussion**

The sole issue presented for the Court to consider is whether the ALJ's RFC finding is supported by substantial evidence and/or was reached through legal error.

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Smoak was not disabled within the meaning of the Social Security Act. (Tr. 12-21). At Step 1, the ALJ found that Smoak did not engage in substantial gainful activity since April 13, 2010. (Tr. 14). At Step 2, the ALJ found that Smoak had the following severe impairments: "partial epilepsy, status post pacemaker implantation, status post gastric bypass surgery, gastroesophageal reflux disease, stomach ulcer, a history of chronic lumbar pain, affective disorder, obesity, panic disorder with agoraphobia, post laminectomy syndrome of lumbar and cervical region, and cervical vertebral fusion syndrome." (Tr. 14). At Step 3, the ALJ found that Smoak did not have an impairment or combination of impairments that meets or equals one of the listings under the applicable regulations. (Tr. 14). Before proceeding to steps 4 and 5, the ALJ assessed Smoak's RFC and determined that she retained the ability to

> perform less than a full range of light work . . . [specifically, Smoak could] occasionally lift and/or carry including upward pulling 20 pounds; frequently lift and/or carry including upward pulling 10 pounds; stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; and her ability to push and/or pull including the operation of hand and/or foot controls is unlimited other than as shown for lifting and/or carrying. [Smoak could] perform simple tasks with routine supervision; she [could] never engage in climbing scaffolds and ladders; and she must avoid even moderate exposure to hazardous machinery and unprotected heights[.]

(Tr. 15). At Step 4, the ALJ found that Smoak was unable to perform any of her past relevant work. (Tr. 19). Finally, at Step 5, the ALJ found that Smoak could perform other jobs that exist in significant numbers in the national economy. (Tr. 19).

I.  **Substantial Evidence Supports the ALJ's RFC Assessment**

Smoak argues that the ALJ erred in failing to "make any finding as to the credibility of [her] testimony," and that this failure resulted in an improper RFC finding. (Pl.'s Br. 6). Smoak further argues that if the ALJ found her testimony credible, the final disability determination would have been favorable to her. (Pl.'s Br. 6).

To properly evaluate a claimant's subjective complaints and credibility, the ALJ must "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). The ALJ must also consider the following factors when assessing a claimant's credibility:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, at *3. Additionally, the ALJ must cite specific reasons for his credibility finding, supported by the case record, and must clearly indicate and give reasons for the weight given to the claimant's statements; it is not enough for the ALJ to make a single, conclusory statement that the claimant's allegations have been considered and are not credible. *Id*. at *2. However, while the ALJ's credibility finding must be made with sufficient specificity, it need not follow formalistic rules. *See Falco v. Shalala* 27 F.3d 160, 163–64 (5th Cir. 1994). ALJs have broad

discretion when making credibility determinations because they must also weigh and resolve conflicts in the evidence. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Finally, "Fifth Circuit precedent [dictates that] 'an ALJ's assessment of a claimant's credibility is accorded great deference' when supported by substantial record evidence." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

Here, the ALJ stated that Smoak's "statements concerning intensity, persistence, and limiting effects of her symptoms are not entirely credible . . .." (Tr. 18). This statement, standing alone, would not withstand judicial review. However, in accordance with the regulations and applicable case law, the ALJ set forth several reasons to support his credibility determination. (TR. 18-19). Among other things, the ALJ reasoned that symptoms from Smoak's back surgery were being controlled with medications, that Smoak did not have any decrease in joint range of motion, that her gait was stable and she did not require an assistive device in ambulation, she did not suffer any decrease in strength in her extremities, that there was no indication of a failing pacemaker, and that she had not suffered a syncopal episode since October 2011. (Tr. 18-19).

After an extensive review of the record, this Court finds that the ALJ's determinations regarding Smoak's credibility and ultimate disability are substantially supported by the evidence on record. Smoak's assertion that the ALJ failed to make any findings as to her credibility is misplaced. The ALJ clearly states, on pages 18 and 19 of the record, that he found Smoak was not entirely credible and provided a list of reasons. The reasons detailed by the ALJ in his decision, and restated, in part, above, reflect an adequate consideration of the factors enumerated in the Regulations. Smoak does not identify, and the Court cannot find, any evidence in the record that contradicts or brings doubt to the ALJ's findings. Moreover, as previously stated, it is the policy and precedent in our circuit to grant the ALJ's credibility findings great deference

when the findings are supported by substantial evidence. Courts may not disturb the ALJ's determinations unless the decision was not supported by substantial evidence or was reached through an error of law.[2] Having found neither an insufficiency of the evidence relied upon nor an error of law through which the decision was reached, it would be improper for the Court to disturb the ALJ's findings in this case. Thus, in accordance with the precedent of the Fifth Circuit, Smoak's sole point of error is overruled.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Smoak's complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED** this 24th day of September, 2014.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

---

[2] *Leggett v. Chatter*, 67 F.3d 558, 564 (5th Cir. 1995).